UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KWAME NKRUMAH *et al.*,
    *Plaintiffs*,

v.

STATE OF CONNECTICUT *et al.*,
    *Defendants*.

No. 3:23-cv-302 (JAM)

**ORDER TO SHOW CAUSE WHY COMPLAINT SHOULD NOT BE DISMISSED**

Plaintiffs Kwame Nkrumah, Shannon Nkrumah, Cheryl Noldon, Carolyn Woodson, and Lula Woodson filed a *pro se* complaint against 104 defendants, including several Connecticut state entities and officials. Because it appears that the complaint does not establish a plausible ground for the Court's exercise of jurisdiction and fails to state a claim on which relief can be granted, the Court issues this order to show cause to require the plaintiffs either to file an amended complaint that overcomes the concerns stated in this order or to file a response that explains why the complaint should not be dismissed.

**BACKGROUND**

The following facts are taken from the "Factual Allegations" section of the plaintiffs' complaint and assumed to be true solely for the purpose of this order.[1]

In 2004, the plaintiffs were in the business of buying and selling real estate in New Haven.[2] In 2008, New Haven city official Rafael Ramos threatened to "shut down" one of Carolyn Woodson's properties (the "Spring Street property") due to the presence of drug

---

[1] Doc. #1 at 44 (capitalization altered); *see id.* at 44–49 (¶¶ 1–28).
[2] *Id.* at 44 (¶ 2).

1

activity.[3] Ramos also tried to prevent Kwame Nkrumah from participating in the real estate business.[4]

On May 3, 2009, Ramos sent New Haven Police Officer M. Koval to prevent Nkrumah from entering the Spring Street property.[5] Koval escorted Nkrumah off the property in a rough manner and threatened to arrest him if he returned.[6] Nkrumah returned to the Spring Street property the next day, at which point four officers, including Officer Robert Maturo, beat and arrested Nkrumah at Koval's behest.[7]

On May 7, 2009, Nkrumah filed a complaint with New Haven Police Captain Joann Peterson, who informed Nkrumah that the New Haven Police Department was not going to investigate his complaint.[8] Peterson's letter referred Nkrumah to Police Captain Blanchard for further questions, who told him to speak to Lieutenant Joseph Streeto.[9] Streeto told Nkrumah that he could not return to the Spring Street property.[10] Nkrumah appealed to Blanchard, who did not help him.[11]

At some point, the Spring Street property's locks had been changed.[12] On May 15, 2009, Nkrumah called a locksmith to change the locks to allow him access, but Streeto prevented him from doing so.[13] Streeto called either Supervisory Assistant State's Attorney Judith Dicine or Senior Assistant State's Attorney Patrice Palumbo, who told Streeto not to let Nkrumah onto the property and not to allow Nkrumah to move his tenant's nephew or his tenant's nephew's family

---

[3] *Ibid.* (¶ 3).
[4] *Ibid.*
[5] *Id.* at 44–45 (¶¶ 3–4).
[6] *Id.* at 45 (¶ 5).
[7] *Id.* at 46 (¶ 11).
[8] *Ibid.* (¶ 13).
[9] *Id.* 46 (¶ 13), 47 (¶¶ 17–18).
[10] *Id.* at 47 (¶ 21).
[11] *Id.* at 48 (¶ 22).
[12] *Id.* at 47 (¶ 20).
[13] *Id.* at 48 (¶ 24), 49 (¶ 27).

into the property.[14] Streeto then threatened to shoot Nkrumah if he returned to the Spring Street property.[15]

In one part of the complaint, the plaintiffs allege 17 claims against the defendants.[16] In another, they allege 63 claims.[17] The claims include constitutional violations brought under 42 U.S.C. § 1983 and § 1985, a violation of the Federal Rules of Criminal Procedure, and violations of Connecticut state law, along with claims (such as "Prosecutor Coverup") whose causes of action are unclear.[18] The plaintiffs seek compensatory damages of $300 million, punitive damages of $500 million, interest, attorney fees, and costs, as well as declaratory and injunctive relief.[19]

## DISCUSSION

This Court has authority to review and dismiss a complaint if it is "frivolous or malicious" or if it "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B); *see Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363–64 (2d Cir. 2000) (*per curiam*).[20] For *pro se* plaintiffs, the Court must give the complaint a liberal construction and interpret it to raise the strongest grounds for relief that its allegations suggest. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*). Still, even a

---

[14] *Id.* at 48 (¶ 25).
[15] *Id.* at 49 (¶ 28).
[16] *Id.* at 33 (¶¶ 106–22).
[17] *Id.* at 50–73 (¶¶ 29–109).
[18] *Id.* at 33 (¶¶ 106–22), 50–73 (¶¶ 29–109); *see id.* at 33 (¶ 119). The plaintiffs do not cite 42 U.S.C. § 1985, but they allege that the defendants violated "42 U.S.C. conspiracy." *Id.* at 33 (¶ 109). The Court will construe this claim to be brought under 42 U.S.C. § 1985, which prohibits conspiracies to interfere with civil rights. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 158 (2d Cir. 2017) ("[T]he failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim.").
[19] Doc. #1 at 50 (¶ 34), 74.
[20] Unless otherwise indicated, this order omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

*pro se* complaint may not survive dismissal if its factual allegations do not establish plausible grounds for relief. *Ibid.*

In the ordinary course, the Court will not dismiss a complaint *sua sponte* without affording the plaintiffs a reasonable opportunity to respond to the concerns that would warrant dismissal. *See Abbas v. Dixon*, 480 F.3d 636, 639–40 (2d Cir. 2007). The purpose of this ruling is to state the Court's concerns so that the plaintiffs may promptly respond or file an amended complaint that addresses these concerns.

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). The same requirement applies to plaintiffs alleging § 1985 claims. *See Sant v. Stephens*, 821 F. App'x 42, 45 (2d Cir. 2020). The plaintiffs name a very large number of defendants, but the body of the complaint does not describe what the majority of these defendants personally did to violate the plaintiffs' rights. Most of the defendants are mentioned only in the context of conclusory, general allegations (one representative example: "The plaintiffs allege the defendant Governor Rell had knowledge or, had he Diligently exercised their duties to instruct, supervise, control and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged is continuing to present to be committed.").[21] Relatedly, the plaintiffs' failure to specify what acts each particular defendant did to violate the plaintiffs' rights runs afoul of Rule 8 of the Federal Rules of Civil Procedure. Rule 8 requires that each defendant have "fair notice of what the plaintiff's claim is and the ground upon which it rests." *Mohammad v. N.Y. State Higher Educ. Servs. Corp.*, 422 F. App'x 61, 62–63 (2d Cir.

---

[21] Doc. #1 at 72 (¶ 106).

2011); *see also* Fed. R. Civ. P. 8(a) ("A pleading that states a claim for relief must contain … (2) a short and plain statement of the claim showing that the pleader is entitled to relief."). A complaint does not satisfy Rule 8 "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001); *see also Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018) (affirming dismissal of "shotgun pleading" complaint on Rule 8 grounds where it was "nearly impossible for Defendants and the Court to determine with any certainty which factual allegations give rise to which claims for relief").

Second, the plaintiffs name as defendants a number of state government entities. But the Eleventh Amendment and related principles of state sovereign immunity generally divest the federal courts of jurisdiction over lawsuits by private citizens against the States, any state government entities, and any state government officials in their official capacities. *See generally Lewis v. Clarke*, 581 U.S. 155, 161–62 (2017); *T.W. v. N.Y. State Bd. of L. Examiners*, 996 F.3d 87, 91–92 (2d Cir. 2021). Congress may abrogate a State's sovereign immunity, but Congress did not do so through § 1983 or § 1985. *See Chris H. v. New York*, 740 F. App'x 740, 741 (2d Cir. 2018).

Third, the plaintiffs name as defendants a number of Connecticut state judges. But judges are absolutely immune from § 1983 and § 1985 suits for damages based on any actions taken within the scope of their judicial responsibilities. *See Deem v. DiMella-Deem*, 941 F.3d 618, 620–21 (2d Cir. 2019). Although judicial immunity does not apply when a judge takes action outside of her judicial capacity, or when she acts "in complete absence of all jurisdiction," *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) (*per curiam*), a judge's "acts arising out of, or related to, individual cases … are considered judicial in nature," *Bliven v. Hunt*, 579 F.3d 204, 210 (2d

Cir. 2009). Because no judges named in the complaint are alleged to have acted outside of their judicial capacity or in the complete absence of all jurisdiction, these defendants appear to be entitled to absolute judicial immunity.

Fourth, the plaintiffs allege that they only just discovered that the defendants "had conspired to steal and [sell] all plaintiffs' properties," but a plaintiff must bring a § 1983 claim within 3 years of when he "kn[ew] or *ha[d] reason to know* of the injury which is the basis of his action." *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (emphasis added); *see also Turner v. Boyle*, 116 F. Supp. 3d 58, 83 (D. Conn. 2015).[22] The same is true of § 1985 claims. *See Inkel v. Connecticut*, 2019 WL 1230358, at *7 (D. Conn. 2019) (citing *Walker v. Jastremski*, 159 F.3d 117, 119 (2d Cir. 1998); and *Meyer v. Frank*, 550 F.2d 726, 727 (2d Cir. 1977)). The facts alleged— including Koval's and Streeto's statements to Nkrumah, the officers' use of force to prevent Nkrumah from entering or remaining on the property, and the changing of the locks— gave the plaintiffs ample reason to believe that they had been dispossessed of their property.

Therefore, the plaintiffs should have filed any § 1983 or § 1985 claim not later than 2012, rather than waiting until 2023. The plaintiffs do not allege facts to suggest that the statute of limitations period should be subject to equitable tolling. Although the statute of limitations must ordinarily be asserted as an affirmative defense, it may serve as a basis for dismissal under 28 U.S.C. § 1915(e)(2)(B) if the complaint indisputably alleges a cause of action that is time-barred by the statute of limitations. *See Pino v. Ryan*, 49 F.3d 51, 53–54 (2d Cir. 1995).

For the same reason, the plaintiffs' claim under Federal Rule of Criminal Procedure 41(g), which permits "[a] person aggrieved by an unlawful search and seizure of property or by

---

[22] *Id.* at 44 (¶ 1) (alleging that the plaintiffs "just discovered on or about February 2, 2022 in a Bankruptcy court hearing that alleged Lender Robert E. Artis, and his defendant conspirators had conspired to steal and sale all plaintiffs' properties").

the deprivation of property [to] move for the property's return," appears to be barred by the applicable statute of limitations. Rule 41(g) "is a rule of Criminal Procedure and normally is inapplicable to a civil proceeding." *Music Deli & Groceries, Inc. v. I.R.S., Dist. Of Manhattan*, 781 F. Supp. 992, 998 (S.D.N.Y. 1991). To be sure, a court may exercise "anomalous jurisdiction" over civil claims under Rule 41(g) in "extraordinary circumstances." *United States v. An Antique Platter of Gold*, 1995 WL 758762, at *1 (S.D.N.Y. 1995); *see also Boyd v. U.S. Dep't of Just.*, 673 F. Supp. 660, 663 (E.D.N.Y. 1987) ("[C]ourts are not compelled to assert their 'anomalous' jurisdiction and should do so, if at all, only when absolutely necessary and with great hesitation."). Even assuming that Rule 41(g) applies, however, the applicable statute of limitations is 6 years, well under the 14-year period between the incidents alleged to have occurred in 2008–2009 and the present. *See Betancur v. United States*, 2013 WL 68711, at *1 (S.D.N.Y. 2013) (citing *Bertin v. United States*, 478 F.3d 489, 493–94 (2d Cir. 2007); and 28 U.S.C. § 2401(a)). Accordingly, to the extent the Court has jurisdiction over plaintiffs' Rule 41(g) claim, the claim appears to be time-barred as well.

      Finally, in the absence of plausible federal claims, I would decline to exercise supplemental jurisdiction over the plaintiffs' state law claims. *See* 28 U.S.C. § 1367(c)(3); *see, e.g.*, *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 117–18 (2d Cir. 2013). Instead, the plaintiffs may seek relief for any state law claims by filing an action in Connecticut state court.

**CONCLUSION**

For the reasons set forth above, it appears that the complaint does not allege facts to establish a plausible ground for the Court's exercise of jurisdiction or for a grant of relief and is therefore subject to dismissal under 28 U.S.C. § 1915(e)(2)(B). The Court intends to dismiss this action unless the plaintiffs either file an amended complaint that overcomes the concerns stated in this order or file a response explaining why the initial complaint should not be dismissed. Any amended complaint or other response to this order to show cause must be filed not later than **April 17, 2023**.

It is so ordered.

Dated at New Haven this 3d day of April 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge